## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ROBERT BARNELLO,** | : | **No. 3:23cv116** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| **POCONO MOUNTAIN REGIONAL** | : | |
| **POLICE COMMISSION and** | : | |
| **ASHLEY RZESZEWSKI, in her** | : | |
| **official and individual capacities,** | : | |
| **Defendants** | : | |

## MEMORANDUM

Before the court is a motion to dismiss filed by Defendants Pocono Mountain Regional Police Commission and Ashley Rzeszewski in this action filed pursuant to 42 U.S.C. § 1983 ("Section 1983"). The parties have fully briefed their respective positions and this matter is ripe for a decision.

**Background**

This civil rights action follows an incident where Plaintiff Robert Barnello rolled his all-terrain vehicle ("ATV") in a private community. (*See* Doc. 1, Compl. ¶¶ 22-23, 49). As a result of the crash and subsequent investigation, plaintiff was charged with driving under the influence of alcohol ("DUI") and other violations of Pennsylvania's Vehicle Code by Defendant Rzeszewski, a municipal police officer. (*See* *id.* ¶ 3). Plaintiff asserts that the defendant officer lacked probable

cause to make an arrest and institute charges.[1] (See id. ¶¶ 67, 71-72, 83, 86, 90, 94, 99).

Plaintiff attaches the following exhibits to his complaint: 1) the police criminal complaint and the defendant officer's affidavit of probable cause, (Doc. 1-2); 2) the incident report form completed by the defendant officer relative to plaintiff's charges, (Doc. 1-3); and 3) the transcript from his preliminary hearing where the defendant officer testified, (Doc. 1-4 ("H.T.")).  Plaintiff's complaint and exhibits set forth the following facts:

On May 2, 2021, Defendant Rzeszewski was dispatched to an intersection within the Stillwater Lakes community in Coolbaugh Township, Monroe County, Pennsylvania for a report of an ATV accident. (Doc. 1, Compl. ¶ 20).  As alleged, Stillwater Lakes is "a private community with private roads." (Id. ¶¶ 49, 59). Defendant Rzeszewski later testified that she had not enforced any traffic laws in the Stillwater Lakes community prior to this incident.  (Doc. 1-4, H.T. at 17:5-8). Per the defendant officer, occasionally the entrances and exits to the community are staffed by security guards and non-residents are not permitted entry into the development without a pass. (See id. at 17:22-18:24).  The officer also agreed that the community is not customarily open to the public. (Id. at 18:25-19:4).  In

---

[1] At this stage of the proceedings, the court must accept all factual allegations in the complaint as true.  Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)(citations omitted). The court makes no determination, however, as to the ultimate veracity of these assertions.

this action, plaintiff takes the position that the defendant officer did not have jurisdiction to charge him with any crimes related to the operation of a motor vehicle and thus probable cause was absent relative to those charges. (See e.g. Doc. 1, Compl. ¶¶ 4, 67).

As for plaintiff's interaction with police in this matter, the defendant officer was advised by dispatch that a male had a laceration to his head and a female had unknown injuries. (Id. ¶¶ 20-21). On scene, she first encountered Plaintiff Robert Barnello's wife, Lisa Barnello. (Id. ¶ 22). Lisa Barnello indicated that her husband was driving the ATV and he rolled the vehicle after making a left-hand turn at a stop sign because he "pressed the gas harder than he could handle[.]" (Id. ¶ 23). Per the defendant officer's incident report, witnesses advised the officer that Lisa Barnello's arm was pinned under the ATV and an off-duty Pennsylvania State Trooper lifted the ATV to extricate her prior to the defendant officer's arrival at the scene. (Doc. 1-3, ECF p. 4).

Defendant Rzeszewski then observed the plaintiff in the back of an ambulance, and she witnessed him bleeding from a head injury. (Doc. 1, Compl. ¶¶ 24, 31; see also Doc. 1-4, H.T. at 19:23:20-5). The defendant officer noted in her affidavit of probable cause and incident report that plaintiff was "alert, conscious, and talking." (Doc. 1-2, ECF p. 6; Doc. 1-3, ECF p. 4).

3

Defendant Rzeszewski reported that she "immediately smelled" the odor of an alcoholic beverage emitting the plaintiff's person and breath. (Doc. 1, Compl. ¶ 26; Doc. 1-2, Police Crim. Compl. ECF p. 6 ("immediately detected"); Doc. 1-3, Police Incident Rep. ECF p. 4 (same)).  Later, at plaintiff's preliminary hearing, the defendant officer testified that she could not distinguish whether the odor derived from beer, wine, or a mixed drink. (Doc. 1-4, H.T. at 24:7-19).  She also could not distinguish whether she smelled an "alcoholic beverage" or "malt brewed alcoholic beverage." (Id. at 24:17-25:25).

In the ambulance, plaintiff confirmed his wife's version of events, i.e., plaintiff rolled the ATV onto its passenger side attempting to turn left at a stop sign. (Doc. 1, Compl. ¶¶ 23-25).  Defendant Rzeszewski reported that plaintiff was slurring his words. (Id. ¶ 30, Doc. 1-2, Police Crim. Compl. ECF p. 6; Doc. 1-3, Police Incident Rep. ECF p. 4).  She later agreed that slurred speech could be a symptom of head trauma at plaintiff's preliminary hearing. (Doc. 1-4, H.T. at 21:9-16).  Likewise, Defendant Rzeszewski also reported that plaintiff had "glossy eyes," but did not indicate that they were red or bloodshot.  (Doc. 1, Compl. ¶ 30, Doc. 1-2, Police Crim. Compl. ECF p. 6; Doc. 1-3, Police Incident Rep. ECF p. 4).  The defendant officer later testified that glossy eyes could also be a symptom of a head injury.  (Doc. 1-4, H.T. at 22:21-23).

4

Per her reports, Defendant Rzeszewski asked plaintiff "if he had anything to drink tonight and he hesitated and stated 'ummm' and did not answer." (Doc. 1-3, Police Incident Rep, ECF p. 4).  She "asked him again and he stated 'no.' " (Id.)  Based on plaintiff's injuries, the defendant officer did not perform standardized field sobriety testing. (Id.; see also Doc. 1, Compl. ¶ 32).

Defendant Rzeszewski then followed the ambulance transporting plaintiff to a local hospital. (Doc. 1, Compl. ¶ 42). There, she reported that she read a DL-26 form to plaintiff and explained the consequences of refusing a blood test.[2] (Id. ¶ 46).  Officer Rzeszewski deemed that the plaintiff refused chemical testing, which triggered a one-year license suspension under Pennsylvania law.[3] (Id. ¶ 48).

Plaintiff contends that the DL-26 form was never read to him. (Id. ¶ 44).  He also asserts that he could not read the DL-26 form because of his injuries and his need for glasses. (Id.)  Moreover, plaintiff alleges that Officer Rzeszewski did not ask treating physicians whether plaintiff could understand or comprehend information due to the extent of his head injury. (Id. ¶ 46).  Plaintiff contends that, since he was not properly advised of his rights as required by Pennsylvania law

---

[2] "Form DL-26 gives an arrestee an easily understandable warning that if he refuses a chemical test and is convicted of DUI, he will be subject to severe penalties because of his refusal." Pennsylvania Dept. of Transp., Bureau of Driver Licensing v. Weaver, 912 A.2d 259, 264 (Pa. 2006).

[3] See 75 PA. CONS. STAT. §1547(b)(1)(i).

and he could not comprehend the warnings given to him due to his head injury, he could not refuse or consent to chemical testing. (Id. ¶ 47).

On May 13, 2021, Defendant Rzeszewski charged plaintiff with DUI in violation of 75 PA. CONS. STAT. § 3802(a)(1) and other Vehicle Code violations. (Doc. 1-2, Police Crim. Compl.).  Specifically, plaintiff was also charged with two summary offenses for violations of: 1) 75 PA. CONS. STAT. § 3361, driving at a safe speed; and 2) 75 PA. CONS. STAT. § 3714(a), careless driving. (Id.).

On July 7, 2021, plaintiff appeared for his preliminary hearing where Defendant Rzeszewski testified to the matters discussed above. (See Doc. 1-4, H.T., generally).  Magisterial District Court Judge Danielle Travagline ultimately bound all charges over for trial in the Monroe County Court of Common Pleas. (Id. at 41:24-42:6).  Regarding plaintiff's arguments about whether the defendant officer had jurisdiction to charge plaintiff with DUI and other Vehicle Code violations, the magisterial district judge stated: "I've read the case law, and this is not the first time this argument has come up in this court.  We have a number of communities that are gated in Coolbaugh Township. I do find that they are to be considered to be public roadways for purposes of the DUI statute, so for that reason I'm going to hold the charges to court." (Id.).

Sometime later, however, the Monroe County District Attorney's Office withdrew the DUI charge. (Id. ¶¶ 68, 90, 92).  The complaint does not indicate

6

whether the driving at a safe speed and careless driving charges were withdrawn. (Id.)  Plaintiff alleges that Defendant Rzeszewski then failed to appear at his drivers' license suspension appeal hearing.[4] (Id. ¶ 75).

Plaintiff filed a complaint on January 20, 2023 asserting six (6) causes of action.  Four (4) Section 1983 claims are raised against Defendant Rzeszewski for alleged Fourth and Fourteenth Amendment violations:

- Count One – unlawful seizure, (Id. ¶¶ 64-79);
- Count Two – false arrest, (Id. ¶¶ 80-87);
- Count Three – malicious prosecution, (Id. ¶¶ 88-96); and
- Count Four – abuse of process, (Id. ¶¶ 97-101).

In Count Five of the complaint, plaintiff asserts a municipal liability claim against the Pocono Mountain Regional Police Commission. (Id. ¶¶ 102-111).  In Count Six, plaintiff alleges that both defendants are liable for intentional infliction of emotional distress. (Id. ¶¶ 112-113).  Defendants responded to the complaint with the instant motion to dismiss for failure to state a claim. (Doc. 10).  The parties have fully briefed their respective positions, bringing this case to its present posture.

---

[4] Plaintiff alleges that this hearing occurred on March 17, 2021, which would predate his DUI charges. (Doc. 1, Compl. ¶ 75).

**Jurisdiction**

Because this case is brought pursuant to Section 1983, the court has jurisdiction pursuant to 28 U.S.C. § 1331. ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). The court has supplemental jurisdiction over plaintiff's state-law IIED claim pursuant to 28 U.S.C. § 1367(a). ("In any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.").

**Legal Standard**

Defendant has filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. The court tests the sufficiency of the complaint's allegations when considering a Rule 12(b)(6) motion.

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim has facial plausibility when factual content is pled that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged.  Id. (citing Twombly, 550 U.S. at 570).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. (citing Twombly, 550 U.S. at 555).

On a motion to dismiss for failure to state a claim, district courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief. See Phillips, 515 F.3d at 233 (citations omitted).  Furthermore, courts may "generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record" when deciding a Rule 12(b)(6) motion. Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)(citations omitted).  As noted above, plaintiff attached several exhibits to his complaint, including the transcript from his preliminary hearing, which the court will consider in ruling upon the motion to dismiss.

**Analysis**

Plaintiff's complaint asserts four (4) separate Section 1983 causes of action against Officer Rzeszewski for alleged violations of his Fourth and Fourteenth Amendment rights: 1) unlawful seizure, 2) false arrest; 3) malicious prosecution;

and 4) abuse of process.[5]  The court will address the defendant officer's arguments regarding the abuse of process claim before addressing her challenges to the other causes of action.

### a.    Abuse of Process

Count Four of plaintiff's complaint claims an abuse of process by Defendant Rzeszewski in violation of the Due Process Clause of the Fourteenth Amendment.  Defendants argue that the plaintiff misstates the claim and that his factual allegations are insufficient to proceed.  The court agrees.

"[A] section 1983 claim for malicious abuse of process lies where prosecution is initiated legitimately and thereafter is used for a purpose other than that intended by the law." Rose v. Bartle, 871 F.2d 331, 350 n.17 (3d Cir. 1989)(citation omitted).  Put another way, this type of claim centers on the misuse of process for any purpose other than which it was designed to accomplish, not on the wrongful procurement of legal process or wrongful initiation of criminal proceedings. See Dunne v. Twp. of Springfield, 500 F. App'x. 136, 139 (3d Cir. 2012)(citations omitted).  Malicious use of process, also known

---

[5] Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials. The statute is not a source of substantive rights; it serves as a mechanism for vindicating rights otherwise protected by federal law. See Gonzaga Univ. v. Doe, 536 U.S. 273, 284–85 (2002). To establish a claim under Section 1983, two criteria must be met. First, the conduct complained of must have been committed by a person acting under color of state law. Sameric Corp. of Del., Inc. v. City of Phila., 142 F.3d 582, 590 (3d Cir. 1998). Second, the conduct must deprive the plaintiff of rights secured under the Constitution or federal law. Id.

as malicious prosecution, is an entirely separate Section 1983 claim. <u>See id.</u>
(citing <u>McArdle v. Tronetti</u>, 961 F.2d 1083, 1088 (3d Cir. 1992)); <u>Jennings v.
Shuman</u>, 567 F.2d 1213, 1216 (3d Cir. 1977).

Plaintiff alleges that Defendant Rzeszewski's "purpose in using such legal
process was primarily to accomplish a purpose for which it was not designed, to
unlawfully arrest the [p]laintiff and intimidate, harass, and annoy him." (Doc. 1,
Compl. ¶ 100).  After careful consideration, plaintiff's averments are simply not
enough to plausibly state a claim for abuse of process in violation of Section
1983.  The unlawful arrest allegation negates a claim for abuse of process since
arrests lead to charges, i.e., the initiation of criminal proceedings, and the plaintiff
has separately filed a malicious prosecution claim in Count Three of his
complaint. <u>See</u> <u>Dunne</u> 500 F. App'x at 136; <u>Napier v. City of New Castle</u>, 407 F.
App'x 578, 582 (3d Cir. 2010)(contrasting Section 1983 abuse of process claims
with Section 1983 malicious prosecution claims); <u>accord</u> <u>Cook v. Tustin</u>, No. CV
24-0431-KSM, 2024 WL 3460112, at *9 (E.D. Pa. July 18, 2024).  As for the
averments that Defendant Rzeszewski's purpose in using such proceedings was
to "intimidate, harass, and annoy" the plaintiff, the complaint is threadbare with
facts supporting that conclusion.  At best, plaintiff has alleged that Officer
Rzeszewski did not appear at a drivers' license suspension appeal hearing after
the DUI charge was dropped. (Doc. 1, Compl. ¶ 93).  Even if ill-intent can be

11

presumed by the defendant officer's alleged failure to appear at plaintiff's drivers' license suspension proceeding, that was an appeal of an administrative decision by the Pennsylvania Department of Transportation separate from the criminal prosecution. See 75 PA. CONS. STAT. § 1547(b)(setting civil penalties for the refusal of chemical testing); see also 75 PA. CONS. STAT. § 1550(a) & 42 PA. CONS. STAT. § 933(a)(1)(ii) (providing for appeals of administrative license suspensions to the courts of common pleas); see also Boseman v. Commonwealth Dep't of Trans., Bureau of Driver Licensing, 157 A.3d 10, 20 (Pa. Commw. Ct. 2017)("a license suspension stemming from a refusal to submit to chemical testing is a separate administrative proceeding")(citation omitted). Accordingly, the motion to dismiss Count Four must be granted.

### b.  Qualified Immunity

Turning next to the other three causes of action against the defendant officer, that is, unlawful seizure, false arrest, and malicious prosecution, all of these claims derive from the Fourth Amendment right to be secure from unreasonable seizures. See Wheeler v. Wheeler, 639 F. App'x 147, 151 (3d Cir. 2016)(citing Albright v. Oliver, 510 U.S. 266, 273 (1994); Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 788–89 (3d Cir. 2000)).  These claims fail if the defendant officer had probable cause to believe a crime was being committed. James v. City of Wilkes–Barre, 700 F.3d 675, 680 (3d Cir. 2012)(false arrest

12

claim); Zimmerman v. Corbett, 873 F.3d 414, 418 (3d Cir. 2017)(malicious

prosecution claim); see also Couden v. Duffy, 446 F.3d 483, 494 (3d Cir.

2006)(citations omitted)(explaining that a seizure is reasonable for Fourth

Amendment purposes when supported by warrant or probable cause).  The

existence of probable cause is generally a factual issue in a Section 1983 action.

Groman v. Twp. of Manalapan, 47 F.3d 628, 635 (3d Cir. 1995).

 As an initial matter, plaintiff alleges that he was arrested.  The defendants

dispute the veracity of that allegation.  At this stage, the court presumes the

accuracy of plaintiff's allegations.  Nonetheless, the police criminal complaint

charges plaintiff with DUI in violation of 75 PA. CONS. STAT. § 3802(a)(1), a

misdemeanor of the first degree. (See Doc. 1-2, Police Crim. Compl.).

Pennsylvania has adopted special rules for this offense.  Under the Pennsylvania

Rules of Criminal Procedure, if a criminal complaint "charges an offense that is a

court case, the issuing authority with whom it is filed[,]" i.e., the magisterial district

court judge, "shall. . .issue a summons and not a warrant of arrest in cases in

which the most serious offense charged is. . .a misdemeanor of the first degree

in cases arising under 75 Pa. C.S. 3802[.]" PA. R. CRIM. P. 509(1).  The state

rules of criminal procedure, however, also provide for exceptions and allow for

discretion by the issuing authority as to whether to issue an arrest warrant.  PA.

R. CRIM. P. 509(2)-(3).  Thus, the court cannot state with certainty whether an

arrest warrant was issued in plaintiff's criminal case or whether that matter proceeded upon the issuance of a summons.  In any event, the defendant officer provided her articulation of probable cause in an affidavit and that affidavit was referenced at plaintiff's preliminary hearing where the magisterial district court judge found that there was a *prima facie* case to hold the charges over for trial.

In challenging plaintiff's claims for unlawful seizure, false arrest, and malicious prosecution, defendants contend that the officer had probable cause and jurisdiction to charge the plaintiff with DUI and other Vehicle Code violations. In the alternative and in the event that it is later determined that Officer Rzeszewski lacked probable cause, defendants assert that Defendant is entitled to qualified immunity.

Since "the Supreme Court has 'repeatedly ... stressed the importance of resolving immunity questions at the earliest possible stage in litigation[,]' " the court will address qualified immunity rather than address the defendants primary arguments in support of dismissal. See HIRA Educ. Servs. N. Am. v. Augustine, 991 F.3d 180, 187 (3d Cir. 2021)(quoting Hunter v. Bryant, 502 U.S. 224, 227 (1991) (per curiam)).  On the other hand, the Third Circuit Court of Appeals has cautioned that "it is generally unwise to venture into a qualified immunity analysis at the pleading stage as it is necessary to develop the factual record in the vast majority of cases." Newland v. Reehorst, 328 F.App'x. 788, 791 n. 3 (3d Cir.

14

2009); but see Olson v. Ako, 724 F. App'x 160, 165 (3d Cir. 2018)(admonishing a district court for reliance upon Newland and finding that a sufficient factual record existed to find qualified immunity on a motion to dismiss).

There is an inherent tension in cases such as this because probable cause is a question of fact and qualified immunity is a question of law. See Sherwood v. Mulvihill, 113 F.3d 396, 401, n. 4 (1997) (citations omitted). The Third Circuit has acknowledged that such tension "may prove problematic in attempting to resolve immunity issues in the early stages of litigation where a genuine and material factual dispute exists concerning probable cause." Id. Here, however, plaintiff has filed a fact-intensive complaint referencing and attaching the police criminal complaint, affidavit of probable cause, police incident report, and the transcript from his preliminary hearing. (Docs. 1-2 to 1-4). The court believes a sufficient record has been provided by the plaintiff to decide the issue of qualified immunity on a motion to dismiss.

The doctrine of qualified immunity shields government officials performing discretionary functions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity "is an *immunity from suit* rather than a mere defense to liability[.]" Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)(emphasis in original). "The qualified immunity

15

standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.' " Hunter, 502 U.S. at 229 (quoting Malley v. Briggs, 475 U.S. 335, 343 (1986)).

The two-part test to determine whether government officials should receive qualified immunity is well settled. Montemuro v. Jim Thorpe Area Sch. Dist., 99 F.4th 639, 642 (3d Cir. 2024) (citing Anglemeyer v. Ammons, 92 F.4th 184, 188 (3d Cir. 2024)). Under the first prong of the qualified immunity analysis on a Rule 12(b)(6) motion, a court must decide whether the facts that plaintiff has alleged make out a violation of a constitutional right. Pearson v. Callahan, 555 U.S. 223, 232 (2009)(citation omitted). Under the second prong, "the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." Id. (citation omitted). In considering qualified immunity, the court may address the prongs of this test in any order. See Pearson, 555 U.S. at 242. The defendant bears the burden of establishing that he is entitled to qualified immunity. Burns v. PA Dep't of Corr., 642 F.3d 163, 176 (3d Cir. 2011)(citing Harlow, 457 U.S. at 819).

This matter can be decided upon consideration of the second prong. To be "clearly established," a legal principle must have a sufficiently clear foundation in then-existing precedent, i.e., the rule must be settled law. D.C. v. Wesby, 583 U.S. 48, 63 (2018)(citing Hunter, 502 U.S. at 228). Settled law means the rule is

"dictated by 'controlling authority' or 'a robust consensus of cases of persuasive authority[.]' " (Id. (quoting Ashcroft v. al–Kidd, 563 U.S. 731, 741 (2011)(further citation omitted)).   "The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. Otherwise the rule is not one that 'every reasonable official' would know." Id. (citing Reichle v. Howards, 566 U.S. 658, 664, 666 (2012)).

Clearly defined law must not be defined at a high level of generality. Id. at 63-64 (citation omitted).  Moreover, "the 'specificity' of the rule is 'especially important in the Fourth Amendment context.' " Id. at 64 (citing Mullenix v. Luna, 577 U.S. 7, 12 (2015)).  Specificity is important because probable cause: 1) turns on the assessment of probabilities; 2) cannot be reduced to a neat set of legal rules; and 3) is incapable of precise definition or quantification into percentages. Id. (citations omitted).  Accordingly, the Supreme Court of the United States has "stressed the need to 'identify a case where an officer acting under similar circumstances ... was held to have violated the Fourth Amendment.' " Id. (quoting White v. Pauly, 580 U.S. 73, 79 (2017) (per curiam)).

As alleged by plaintiff, Defendant Rzeszewski arrived at the scene of an ATV rollover accident at an intersection within a residential community with injuries to the plaintiff and his wife.  Plaintiff and his wife both told the defendant officer that they were at a stop sign making a left turn when plaintiff pressed the

17

gas harder than he could handle, which caused the ATV to rollover onto the passenger side. (Doc. 1, Compl. ¶¶ 23, 25).  The officer smelled alcohol on plaintiff's breath and observed his slurred speech and glossy eyes. (Id. ¶¶ 26, 30).

Accordingly, to avoid a determination that qualified immunity applies, it must have been clearly established that an officer would not have probable cause to charge plaintiff with DUI, driving at an unsafe speed, or careless driving under these circumstances.  Plaintiff has not provided such a case and the court's research has uncovered none.  Rather, plaintiff responds with arguments that the defendant officer did not have probable cause to charge plaintiff with DUI and other Vehicle Code violations in a private community under Pennsylvania law. (Doc. 13 Br. in Opp. at pp. 5-9).  After careful review of cases from the Commonwealth, defendant's jurisdictional arguments are unpersuasive.

Pennsylvania's Vehicle Code distinguishes between laws of general applicability and laws for "serious traffic offenses." 75 PA. CONS. STAT. § 3101. Generally, laws relating to the operation of vehicles, such as the speeding and careless driving laws plaintiff was charged with, "refer exclusively to the operation of vehicles upon highways." 75 PA. CONS. STAT. § 3101(a).  Violations relating to driving after imbibing alcohol are classified as "serious traffic offenses." 75 PA.

CONS. STAT. § 3101(b). Those laws apply "upon highways and trafficways throughout [the] Commonwealth." Id.

"Highway" is defined in relevant part as, "[t]he entire width between the boundary lines of every way publicly maintained when any part thereof is open to the use of the public for purposes of vehicular travel." 75 PA. CONS. STAT. § 102. "Trafficway" is defined as, "[t]he entire width between property lines or other boundary lines of every way or place of which any part is open to the public for purposes of vehicular travel as a matter of right or custom." Id. The definition of "highway" is different from the definition of "trafficway," and the courts of Pennsylvania have remarked that if the General Assembly had not meant to differentiate, it would not have defined them differently. Commonwealth v. Aircraft Serv. Int'l Grp., 917 A.2d 328, 331 (Pa. Super. Ct. 2007).

In Aircraft Serv. Int'l, the Superior Court reversed convictions of (non-DUI) traffic offenses when a jet fuel truck overturned on a service road or taxiway at the Philadelphia International Airport ("PHL"). That decision turned on whether those areas were open to public for vehicular traffic, i.e. "highways." Id. In that case, the restricted areas of PHL were determined not to be "highways." Id. However, as stated in another non-DUI case, "the public use component of section 102 of the Motor Vehicle Code [the definitions section] can be met despite certain restrictions on access to the regulated area so long as the record

establishes that a sufficient number of drivers use the roadway for vehicular traffic." Commonwealth v. Ansell, 143 A.3d 944, 949 (Pa. Super. Ct. 2016)(collecting cases).

Similarly, regarding DUI matters, "Pennsylvania law recognizes that roadways in private areas, or areas restricted to permit-holders, can still meet the "public use" requirement for purposes of. . .the DUI statute." Commonwealth v. Lees, 135 A.3d 185, 189 (Pa. Super. Ct. 2016)(collecting cases).  But of course, there are cases to the contrary of that proposition.  The Pennsylvania Superior Court affirmed the dismissal of criminal charges where an individual was arrested for DUI on an Air Force base because the general public could not enter the base "as a matter of right or custom."  Commonwealth v. Wyland, 987 A.2d 802, 806 (2010).  And in Commonwealth v. McFadden, 547 A.2d 774 (Pa. Super. Ct. 1988), a plurality of the Superior Court reversed a DUI conviction after determining that the road in question, a dead-end, private drive to a trailer park, was not customarily open to vehicular traffic.[6] Id.

The import from these cases is that it is far from "clearly established" in Pennsylvania that roads within private communities are off-limits for police enforcement of DUI and lesser Vehicle Code violations. It was also far from

---

[6] McFadden has no precedential value based on one judge concurring in the result and one judge dissenting. See Commonwealth v. Wilson, 553 A.2d 452, 454 (Pa. Super. Ct. 1989).

"clearly established" that an officer would not have probable cause to arrest someone for DUI, speeding, and careless driving, where she observed a wrecked ATV with an injured driver, the driver admitted he rolled the vehicle one way when trying to turn the other way at an intersection, and the officer smelled alcohol on the driver's breath and noticed his slurred speech and glossy eyes. Accordingly, the law at the time of the accident did not place the constitutional questions related to Defendant Rzeszewski's conduct beyond debate.  See al-Kidd, 563 U.S. at 741.

Additionally, it must be noted that the officer prepared an affidavit of probable cause in support of a summons or arrest warrant.  (See Doc. 1-2). Plaintiff does not challenge Defendant Rzeszewski's articulation of probable cause in her affidavit.  He does not aver that the officer lied or misrepresented facts or deliberately omitted information.  Plaintiff also does not allege that the officer lied or misrepresented facts while testifying at his preliminary hearing. Rather, plaintiff frames his case as a wrong decision reached by the officer.[7]

---

[7] The court notes that plaintiff pleads the facts of this civil action as if he were before a jury in his criminal case.  He painstakingly details testimony from the defendant officer that she "could not identify" if she smelled the odor of "mouthwash, herbal tea and/or cough syrup" on plaintiff's person and breath. (Doc. 1, Compl. ¶ 28 (citing Doc. 1-4, H.T. 24:3-25:25)).  He also cites testimony that the defendant officer did not rule out that the plaintiff's slurred speech was from "having recent dental surgery or a prior speech impediment." (Id. ¶ 34 (citing Doc. 1-4, H.T. 21:13-22:15)).  Additionally, plaintiff refers to testimony that she did not rule out whether plaintiff's glossy eyes came from "a negative reaction to medication, a symptom of seasonal allergies or contact/eye irritation." (Id. ¶ 39 (citing Doc. 1-4, H.T. 22:21-23:22)).  But "[t]he probable cause inquiry is 'commonsense,' 'practical,' and 'nontechnical' and it is based on the

Even presuming plaintiff's averments to be true and construing all alleged facts in his favor, the qualified immunity standard "gives ample room for mistaken judgments[.]" See Malley, 475 U.S. at 343.

Defendant Rzeszewski is thus entitled to qualified immunity and plaintiff's Section 1983 claims for unlawful seizure, false arrest, and malicious prosecution in Counts One, Two, and Three must be dismissed.[8]

### c.   Municipal Liability

Defendants also move to dismiss Count Five of plaintiff's complaint, which asserts a Section 1983 municipal liability claim against the Pocono Mountain

---

totality of the circumstances and is judged by the standard of 'reasonable and prudent men.'" United States v. Donahue, 764 F.3d 293, 300 (3d Cir. 2014) (quoting Illinois v. Gates, 462 U.S. 213, 230–31 (1983)).  The totality-of-the-circumstances test for probable cause precludes a divide-and-conquer analysis, such as the one used by plaintiff in pleading his legal theories. Wesby, 583 U.S. at 61 (citing United States v. Arvizu, 534 U.S. 266, 274, (2002)).

[8] A lack of causation also justifies the dismissal of these claims against Defendant Rzeszewski. As noted throughout this memorandum, plaintiff does not argue that the defendant officer misled the magisterial district court judge in her affidavit of probable cause or in her testimony at the preliminary hearing.  Instead, he attaches the preliminary hearing transcript, which reflects that the magisterial district court judge heard extensive legal argument from plaintiff's attorney that the defendant officer lacked the ability to charge the plaintiff because the ATV crash occurred in a private community. (Doc. 1-4, H.T. at 33:16-34:6; 39:10-40:16, 41:19-22).  Such arguments were presented to the judge and were based on the officer's testimony at that hearing. (Id.)  The magisterial district court judge then determined that the roads were public roadways for the purposes of the DUI statute and moved the case to the court of common pleas for trial. (Id. 41:25-42:6).  Assuming plaintiff's averments to be true and Pennsylvania law to be on his side, where a "judicial officer is provided with the appropriate facts to adjudicate the proceeding but fails to properly apply the governing law and procedures, such error must be held to be a superseding cause, breaking the chain of causation for purposes of § 1983 and Bivens liability." Egervary v. Young, 366 F.3d 238, 250–51 (3d Cir. 2004); see also Johnson v. Provenzano, 646 F. App'x 279, 282 (3d Cir. 2016).  Accordingly, the magisterial district court judge's determination serves as a superseding cause of plaintiff's alleged injuries justifying the dismissal of Section 1983 claims against the defendant officer.

Regional Police Commission ("PMRPC"). Defendants argue that the complaint fails the basic pleading requirement that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief" regarding this claim. (Doc. 11, Br. in Supp. at 16-17)(citing FED. R. CIV. P. 8(a)(2)). Plaintiff counters by repeating the allegations of his complaint and requesting an opportunity to file an amended complaint. (Doc. 13, Br. in Opp. at 16-18).

At the outset, the court notes that, while the complaint is very fact-specific regarding the defendant officer's conduct, plaintiff only pleads statements of law regarding failure-to-train claims, (Doc. 1, Compl. ¶¶ 103-105), and the following averments regarding those claims and other theories of municipal liability:

> 106. PMRPC maintained, tolerated, permitted, and acquiesced in policies, practices, and customs that among other things subjected persons to unlawful seizures and subjected persons to false arrests among other dangerous and unlawful violations of persons' constitutional rights.
>
> 107. These policies, practices and customs were the moving force that resulted in the Plaintiff's constitutional and statutory rights being violated.
>
> 108. It is believed that discovery will further reveal that PMRPC knew of a "pattern of similar constitutional violations" by improperly trained and improperly supervised employees.
>
> 109. Further it is believed that discovery will reveal that PMRPC condoned and/or encouraged officers in the belief that violations of the rights of persons would not be deemed a dereliction of duty or in violation of the sworn oath of police officers in the Commonwealth of Pennsylvania, and

that such conduct would and will not adversely affect those officers' opportunities for promotion and/or other employment benefits.

110. It is also believed that discovery will reveal these actions and/or inactions by PMRPC, were conducted and/or not conducted with deliberate indifference, gross negligence and reckless disregard to the safety, security, and constitutional rights of persons, specifically in this case BARNELLO.

(Doc. 1, Compl. ¶¶ 106–110).

Municipal liability under Section 1983 is available only under certain circumstances. A local government may not be sued under Section 1983 for an injury inflicted solely by its employees or agents. Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 694 (1978). Rather, liability extends when injuries are inflicted by "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy[.]" Id.

There are "three situations where acts of a government employee may be deemed to be the result of a policy or custom of the governmental entity for whom the employee works, thereby rendering the entity liable under § 1983." Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 584 (3d Cir. 2003). As explained, "[t]he first [situation] is where the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy." Id. (citation and internal

24

quotation marks omitted). "The second occurs where no rule has been announced as policy but federal law has been violated by an act of the policymaker itself." Id. The third scenario occurs "where the policymaker has failed to act affirmatively at all, though the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need." Id. (citations, internal quotations, and bracketing omitted).

The above allegations in plaintiff's complaint represent formulaic recitations of scenarios permitting municipal liability claims and statements that discovery will reveal facts supporting these claims. Such conclusory allegations are deficient and subject to dismissal under Rule 12(b)(6). Twombly, 550 U.S. at 555. Furthermore, to the extent that plaintiff avers discovery will support these conclusions, a plaintiff armed with only conclusions cannot unlock the doors to discovery. See Icbal, 556 U.S. at 678–79. Consequently, the motion to dismiss will be granted as to plaintiff's municipal liability claim against PMRPC in Count Five. As for plaintiff's request for leave to amend, the court will address defendants' arguments that amendment of this claim would be futile in Section 1e below.

**d.    Intentional Infliction of Emotional Distress**

Count Six of plaintiff's complaint asserts a state law claim for intentional infliction of emotional distress ("IIED") against both defendants. The four elements plaintiff must establish under Pennsylvania law are: "(1) the conduct must be extreme and outrageous; (2) the conduct must be intentional or reckless; (3) it must cause emotional distress; and (4) the distress must be severe." Jordan v. Pennsylvania State Univ., 276 A.3d 751, 775 (Pa. Super. Ct. 2022)(adopting trial court opinion), app. denied, 296 A.3d 1081 (Pa. 2023), cert. denied, 144 S. Ct. 432 (2023), reh'g denied, 144 S. Ct. 714 (2024) (citations omitted).

Defendant PMRPC argues that it is immune from IIED claims pursuant to the Pennsylvania Political Subdivision Tort Claims Act, 42 PA. CONS. STAT. § 8541, et seq. ("PSTCA").  As delineated by the PSTCA, local agencies, i.e. municipalities, can only be liable for damages if the injury is caused by the "negligent acts" of the local agency or an employee acting within the scope of their duties with respect to nine enumerated categories.[9] 42 PA. CONS. STAT. § 8542(a)(2).  "Negligent acts" are defined by statute to exclude "acts or conduct which constitutes. . .actual malice or willful misconduct." Id.  Federal courts

---

[9] Those categories, which provide exceptions to immunity, are: 1) vehicle liability; 2) care, custody, or control of personal property; 3) real property; 4) trees, traffic control, and street lighting; 5) utility service facilities; 6) streets; 7) sidewalks; 8) care, custody, or control of animals; and 9) sexual abuse. 42 PA. CONS. STAT. § 8542(b)(1)-(9).

applying Pennsylvania law have thus found that the PSTCA immunizes

municipalities from IIED claims since that action is an intentional tort claim.

Simpson v. Phila. Sheriff's Office, 351 F. Supp. 3d 919, 926 & nn. 27-29 (E.D.

Pa. 2019); Dull v. W. Manchester Twp. Police Dep't, 604 F. Supp. 2d 739, 754

n.10 (M.D. Pa. 2009); Roskos v. Sugarloaf Twp., 295 F. Supp. 2d 480, 490–91

(M.D. Pa. 2003); Lakits v. York, 258 F. Supp. 2d 401, 405 (E.D. Pa. 2003).

Accordingly, the IIED claim against Defendant PMRPC must be dismissed.

Defendant Rzeszewski also challenges the IIED claim made against her,

arguing that the complaint fails to allege facts demonstrating that her conduct

was "extreme and outrageous."   Liability on an IIED claim "has been found only

where the conduct has been so outrageous in character, and so extreme in

degree, as to go beyond all possible bounds of decency, and to be regarded as

atrocious, and utterly intolerable in a civilized community." Reedy v. Evanson,

615 F.3d 197, 231–32 (3d Cir. 2010)(quoting Field v. Phila. Elec. Co., 565 A.2d

1170, 1184 (Pa. Super. Ct. 1989)).  Regarding this element, Pennsylvania law

directs that "it is for the court to determine in the first instance whether the

defendant's conduct may reasonably be regarded as so extreme and outrageous

to permit recovery." Swisher v. Pitz, 868 A.2d 1228, 1231 (Pa. Super. Ct. 2005).

Conduct found to be outrageous includes: "(1) killing the plaintiff's son with

an automobile and then burying the body, rather than reporting the incident to the

27

police; (2) intentionally fabricating documents that led to the plaintiff's arrest for murder; and (3) knowingly releasing to the press false medical records diagnosing the plaintiff with a fatal disease." Dull, 604 F. Supp. 2d at 756 (citing Hoy v. Angelone, 720 A.2d 745, 754 (Pa. 1998)(further citations omitted)).

In Dull, a local police department forcibly arrested a grandmother after she brought film to a retail store for processing into prints. Id. at 745.  The grandmother had taken photos of her four-year-old granddaughter as she prepared her for a bath and in at least ten of the photos, the child was nude. Id. Upon arresting the grandmother, the local officers handcuffed and slammed her into the side of a vehicle causing her injuries. Id. at 746.  The police charged the grandmother with a child exploitation offense and authorities pursued the charges for approximately one year. Id. at 747.  The police conduct in that case was not extreme and outrageous enough to support an IIED claim. Id. at 756.

The facts alleged in this case likewise do not advance a plausible IIED claim.  Even construing the facts of the complaint in a light most favorable to the plaintiff, he does not dispute the statements in the defendant officer's affidavit of probable cause to charge him with DUI and other offenses.  Rather, plaintiff only disputes statements by Officer Rzeszewski that she read the DL-26 form to him at the hospital and advised him of the consequences of refusing chemical testing. (Doc. 1, Compl. ¶¶ 43-44).  Plaintiff asserts that he was just handed "a paper" by

the officer, which he could not read due to his injuries and his need for glasses.
(Id. ¶¶ 44-45).  Assuming these allegations about the DL-26 form to be true, the
officer's conduct would not be sufficiently extreme and outrageous to support an
IIED claim under Pennsylvania law.  Accordingly, the IIED claim asserted against
the defendant officer will also be dismissed.

### e.   Leave to Amend

Defendants' motion to dismiss will be granted as to all counts in the
complaint.  If a complaint is subject to dismissal under Rule 12(b)(6), a district
court must permit a curative amendment unless such amendment would be
inequitable or futile.  Phillips, 515 F.3d at 245 (citation omitted).  Having found
that Defendant Rzeszewski is entitled to qualified immunity, amendment of
plaintiff's Section 1983 claims against her would clearly be futile.  Additionally,
based on the allegations in plaintiff's complaint and the exhibits attached thereto,
amendment of plaintiff's state law IIED claim would also be futile. Counts One
through Four and Count Six will thus be dismissed with prejudice.

That leaves the municipal liability claim asserted against Defendant
PMRPC in Count Five.  After careful consideration, that claim is also futile.

"Plaintiffs who seek to impose liability on local governments under § 1983
must prove that 'action pursuant to official municipal policy' caused their injury[,]"
which includes "the decisions of a government's lawmakers, the acts of its

policymaking officials, and practices so persistent and widespread as to practically have the force of law." Connick v. Thompson, 563 U.S. 51, 60–61 (2011)(citing Monell, 436 U.S. at 691, 694)(further citations omitted).

Plaintiff's complaint attempted to assert a failure-to-train claim with conclusory statements. (See Doc. 1, ¶¶ 104-105, 108, 110). Based on a totality of the other averments, any factual allegations related to the failure-to-train claim would be limited to a single event, plaintiff's own incident.

"In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." Connick, 563 U.S. at 61. Furthermore, to satisfy Section 1983, a municipality's failure to train its police officers must amount "to deliberate indifference to the rights of persons with whom the police come into contact." City of Canton, Ohio v. Harris, 489 U.S. 378, 388 (1989)(footnote omitted). "Additionally, 'the identified deficiency in a city's training program must be closely related to the ultimate injury;' or in other words, 'the deficiency in training [must have] actually caused' the constitutional violation." Thomas v. Cumberland Cnty., 749 F.3d 217, 222 (3d Cir. 2014)(quoting Canton, 489 U.S. at 391).

"A pattern of similar constitutional violations by untrained employees is "ordinarily necessary" to demonstrate deliberate indifference for purposes of

failure to train." Connick, 563 U.S. at 62 (2011)(citing Board of Comm'rs of Bryan

Cnty. v. Brown, 520 U.S. 397, 403 (1997)).  However, "'in a narrow range of

circumstances,' a pattern of similar violations might not be necessary to show

deliberate indifference." Id. (quoting Bryan Cnty., 520 U.S. at 409).  "[A] single

violation of federal rights, accompanied by a showing that a municipality has

failed to train its employees to handle recurring situations presenting an obvious

potential for such a violation, could trigger municipal liability." Bryan Cnty., 520

U.S. at 409 (citing City of Canton, 489 U.S. at 390 & n. 10).  In City of Canton,

the Supreme Court offered a hypothetical single-incident example of a city that

gives its police force firearms and deploys them to capture fleeing felons without

instructing them on the constitutional limitations on the use of deadly force. See

Connick, 563 U.S. at 64 (discussing City of Canton, 489 U.S. at 390 & n. 10).

Returning to the constitutional violations alleged in this case, plaintiff's

failure-to-train theories rest, in large part, on Defendant Rzeszewski's ostensible

lack of probable cause to charge the plaintiff with DUI and other Vehicle Code

violations on the roads within a private residential community.  Plaintiff offers

nothing to suggest an "obvious" need to train officers to respond to vehicle

crashes in gated communities where DUI is suspected and nothing akin to the

life-or-death consequences envisioned in the City of Canton single-incident

31

hypothetical. <u>See Connick</u>, 563 U.S. at 64.   Consequently, amendment of any

failure to train claim would be futile.

Plaintiff's complaint also attempted to assert a policy-or-custom municipal

liability claim. (Doc. 1, Comp. ¶ 103, 106-107, 109, 111).  With regard to

establishing that theory:

> the Supreme Court has explained, "[p]roof of a single
> incident of unconstitutional activity is not sufficient to
> impose liability under <u>Monell</u>, unless proof of the incident
> includes proof that it was caused by an existing ...
> municipal policy, which policy can be attributed to a
> municipal policymaker." <u>City of Oklahoma City v. Tuttle</u>,
> 471 U.S. 808, 823–24, 105 S.Ct. 2427, 85 L.Ed.2d 791
> (1985) (plurality opinion).
>
> The rationale for this rule is straightforward. "[A] single
> incident of police misbehavior by a single policeman is
> insufficient as sole support for an inference that a municipal
> policy or custom caused the incident." <u>Id.</u> at 832, 105 S.Ct.
> 2427 (Brennan, J., concurring)[further citations and
> explanatory parentheticals omitted]

<u>Brown</u> v. <u>City</u> of <u>Pittsburgh</u>, 586 F.3d 263, 292–93 (3d Cir. 2009)(formatting
modified).

Plaintiff's complaint offers nothing in the way of facts that Officer

Rzeszewski's conduct was attributable to an existing policy, which could be tied

back to a policymaker.  Plaintiff offers only conclusions. And to the extent that

plaintiff has asked for leave to amend, his request is not accompanied with

information that he could use to demonstrate a municipal liability claim.  Thus,

the court will dismiss plaintiff's municipal liability claim against Defendant PMRPC without leave to amend and direct the Clerk of Court to close this case.

**Conclusion**

For the reasons set forth above, defendants' motion to dismiss will be granted and the Clerk of Court will be directed to close this case.  An appropriate order follows.

Date: _8/12/2024_

JUDGE JULIA K. MUNLEY
United States District Court